IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

| | |
|---|---|
| DAVID SANCHEZ, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>TNT CRANE & RIGGING, INC.<br><br>Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§     Civil Action No. 21-203 |

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

Plaintiff David Sanchez ("Named Plaintiff") on behalf of himself and all others similarly situated (Named Plaintiff, potential FLSA Opt-In Plaintiffs, and potential New Mexico Minimum Wage Act Class Members are collectively referred to herein as "Plaintiffs") brings this suit against the above-named Defendant under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, as amended, and the New Mexico Minimum Wage Act ("NMMWA"), N.M. STAT. § 50-4-19, *et seq*., as amended. Named Plaintiff shows as follows:

### I. NATURE OF SUIT

1. The FLSA was passed by Congress in 1938 to eliminate low wages and long hours and to correct conditions that were detrimental to the health and well-being of workers. *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945). To achieve its humanitarian goals, the FLSA "limits to 40 a week the number of hours that an employer may employ any of his employees subject to the Act, unless the employee receives compensation for his employment in excess of 40 hours at a rate not less than one and one-half times the regular rate at which he is employed." *Walling v.*

*Helmerich & Payne,* 323 U.S. 37, 40 (1944) (discussing the requirements of 29 U.S.C. § 207(a)).

2. Likewise, the NMMWA requires that employees who work more than forty hours in a week be paid one and one-half their regular hourly rate for hours worked in excess of forty hours. N.M. STAT. § 50-4-22.

3. Defendant TNT Crane & Rigging, Inc. ("Defendant") has violated the FLSA and the NMMWA by failing to pay its crane operators in accordance with the guarantees and protections of the FLSA and the NMMWA. Defendant has refused to pay its crane operators at time-and-one-half their regular rates of pay for all hours worked in excess of forty hours within a workweek. It has done so by knowingly permitting its crane operators to engage in compensable travel time and compensable preparatory and concluding work but nevertheless intentionally refusing to pay those crane operators for all of that travel time or preparatory and concluding work. Because there are other putative plaintiffs who are similarly situated to the Named Plaintiff with regard to the work performed and the Defendant's compensation policies, Named Plaintiff bring this action as an opt-in collective action pursuant to 29 U.S.C. § 216(b) and as an opt-out class action under Federal Rule of Civil Procedure 23.

## II. PARTIES

4. Named Plaintiff David Sanchez is an individual who resides in Midland County, Texas. He has consented to be a party-plaintiff in this action. His consent form is attached as Exhibit A.

5. Defendant TNT Crane & Rigging, Inc. is a Texas for-profit corporation that is authorized to do business in Texas and that is doing business in Texas. Defendant maintains its principal office in Houston, Texas, and can be served with process by service on its registered agent, Capitol Corporate Services, Inc., 206 E. 9th Street, Suite 1300, Austin, Texas 78701-4411.

### III. JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction in this matter because Plaintiffs assert claims arising under federal law. Specifically, Plaintiffs assert claims arising under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq*. This Court, therefore, has jurisdiction pursuant to 28 U.S.C. § 1331. Plaintiffs' NMMWA claims form part of the same case or controversy under Article III of the United States Constitution. Therefore, this Court has supplemental jurisdiction over Plaintiffs' NMMWA claims pursuant to 28 U.S.C. §1367(a). This Court also has personal jurisdiction over all parties to this action.

7. Venue is proper in the Midland Division of the United States District Court for the Western District of Texas. A substantial part of the events forming the basis of this suit occurred in Midland County, Texas, which is in this District and Division. Named Plaintiff Sanchez was an employee of Defendant, and he has performed work for Defendant, in Midland County, Texas. Defendant is subject to this Court's personal jurisdiction with respect to this civil action. Defendant thus resides in this district and division. 28 U.S.C. §1391(c). Venue in this Court is therefore proper under 28 U.S.C. § 1391(b).

### IV. COVERAGE UNDER THE FLSA

8. At all relevant times, Defendant has been an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

9. At all relevant times, Plaintiffs were "employees" (as defined in Section 3(e)(1) of the FLSA, 29 U.S.C. § 203(e)(1)) whom Defendant at all relevant times "employ[ed]" within the meaning of Section 3(g) of the FLSA, 29 U.S.C. § 203(g).

10. At all relevant times, Defendant has been engaged in an "enterprise" within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

11. At all relevant times, Defendant has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that Defendant is an enterprise and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

12. In the performance of their work, Plaintiffs handle tools, equipment, and other materials that were manufactured outside of the State of Texas and outside of the State of New Mexico, including, for example, cranes and rigging equipment.

13. At all relevant times, Plaintiffs were engaged in commerce or in the production of goods for commerce, or were employed in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. §207.

## V. COVERAGE UNDER THE NMMWA

14. At all times hereinafter mentioned, Defendant has been an "employer" within the meaning of Section 50-4-21(B) of the NMMWA.

15. At all times hereinafter mentioned, Named Plaintiff and the New Mexico Class Members (defined below) were individual "employees" within the meaning of Section 50-4-21(C) of the NMMWA, and whom Defendant at all relevant times "employ[ed]" within the meaning of Section 50-4-21(A).

## VI. FACTUAL ALLEGATIONS

16. Defendant is a crane and rigging company that provides services throughout North America, including the United States. It provides lifting services across the Permian Basin, including in Midland County. Defendant is one of the largest crane operators in the world and

employs dozens of crane operators out of its Midland, Texas yard alone.

17. Named Plaintiff Sanchez was employed by Defendant from approximately June 2015 until approximately December 2018.

18. From approximately February 2018 to December 2018, Named Plaintiff Sanchez worked for Defendant as a crane operator at Defendant's worksites in and around the Permian Basin, including in Midland County, Texas and in New Mexico.

19. For all times relevant to this action, as crane operators, the Plaintiffs' primary job duty for the Defendant has been the performance of manual, non-management work. Plaintiffs spend most of their time performing manual tasks outside at oilfield or construction jobsites, such as (1) rigging up and rigging down cranes; (2) inspecting Defendant's cranes, (3) servicing Defendant's cranes; (4) completing Job Safety Analyses (JSAs); and (5) operating Defendant's cranes.

20. The job description and job duties of the crane operators at each of the Defendant's locations was and is essentially the same.

21. Defendant paid Plaintiffs an hourly wage plus, on particular jobs, a per diem.

22. The crane operators typically work no fewer than 50 hours, and often as many as 100 hours, per week.

23. However, Defendant did not pay Plaintiffs at all for substantial amounts of time spent on compensable preparatory and concluding tasks and compensable travel.

24. Plaintiffs were required to perform various preparatory and concluding tasks outside of their jobsites, including but not limited to obtaining and loading fuel, diesel exhaust fluid (DEF), lubricants, water, ice, and other items onto their vehicles before driving to their jobsites or after returning from their jobsites. Plaintiffs sometimes obtained these items from one of Defendant's yards and sometimes obtained them from stores or gas stations. In addition, Plaintiffs were often required to pick up and drop off riggers at one of Defendant's yards or another designated location.

25. Plaintiffs frequently started or ended their workday when they obtained these materials or picked up or dropped off riggers. Obtaining and loading these materials and picking up and dropping off riggers was integral and indispensable to the performance of the crane operators' primary job duty for the Defendant—operating its cranes. Without these materials or riggers, Plaintiffs could not have safely and effectively performed their work for Defendant.

26. After performing preparatory work and picking up the riggers, Plaintiffs drove themselves and the riggers to their jobsites in Texas and New Mexico. The drives to the jobsites would often take 2-3 hours or more.

27. Defendant provided vehicles for Plaintiffs to drive to and from the jobsites. For example, Defendant provided the Plaintiffs Chevrolet Silverado 2500HDs, Chevrolet 1500s, Ford F250s, and Ford F150s.

28. Plaintiffs used the vehicles that Defendant provided to transport themselves, their riggers, fuel, DEF, rigging, lubricant, paperwork, water, and other supplies that were necessary to perform their work to their jobsites.

29. Defendant maintained and followed policies and practices under which it refused to pay crane operators for their time traveling to and from their jobsites depending on certain circumstances such as whether the operator paid for his own lodging and whether Defendant's customer paid for the travel time.

30. Defendant followed the policies and practices described in the preceding paragraph without regard to whether the Plaintiffs had performed compensable preparatory tasks before traveling to their jobsites or compensable concluding tasks after returning from their jobsites.

31. As a result, Defendant refused to pay Plaintiffs on many occasions for compensable work time traveling and performing preparatory and concluding tasks. Plaintiffs performed this off-the-clock work in many weeks in which they worked more than 40 hours, resulting in unpaid overtime.

32. Defendant has knowingly, willfully, or with reckless disregard carried out, and continues to carry out, its illegal pattern or practice of failing to pay overtime compensation to Plaintiffs.

## VII. FLSA COLLECTIVE ACTION ALLEGATIONS

33. Under 29 U.S.C. § 216(b), Named Plaintiff Sanchez seeks authorization to send notice of the right to join this lawsuit to a group of similarly situated employees delineated as follows:

> **All current and former crane operators employed and paid through Defendant's Midland branch who were paid by the hour in the last three years.**

34. Named Plaintiff and the Potential Opt-In Plaintiffs performed the same or similar job duties as one another in that they worked as crane operators in Texas and New Mexico.

35. Further, Named Plaintiff and the Potential Opt-In Plaintiffs were denied overtime pay for compensable travel and preparatory and concluding tasks under the same policies and practices described above. Application of those policies and practices does not depend on the personal circumstances of the Named Plaintiff or those joining this lawsuit. Thus, the Potential Opt-In Plaintiffs are owed unpaid overtime for the same reasons as Named Plaintiff, without regard to their individualized circumstances.

## VIII. NMMWA RULE 23 CLASS ALLEGATIONS

36. Named Plaintiff Sanchez, individually and on behalf of all other similarly situated employees, pursues his NMMWA claims against Defendant on a class basis under Rule 23 of the Federal Rules of Civil Procedure.

37. Named Plaintiff Sanchez seeks certification of a class under Rule 23 of the Federal Rules of Civil Procedure (the "New Mexico Class Members") as follows:

> **All current and former crane operators employed and paid through Defendant's Midland branch who were paid by the hour and worked for Defendant in New Mexico in at least one workweek at any time.**

38. Named Plaintiff Sanchez, individually and on behalf of all other similarly situated employees, seeks relief on a class basis for Defendant's policies and practices of refusing to pay them for compensable travel and preparatory and concluding tasks in overtime weeks.

39. Named Plaintiff and the New Mexico Class Members performed the same or similar job duties as one another in that they worked as crane operators in Texas and New Mexico.

40. Further, Named Plaintiff and the New Mexico Class Members were denied overtime pay for compensable travel and preparatory and concluding tasks under the same policies and practices described above. Application of those policies and practices does not depend on the personal circumstances of the Named Plaintiff or those joining this lawsuit. Thus, the Potential Opt-In Plaintiffs are owed unpaid overtime for the same reasons as Named Plaintiff, without regard to their individualized circumstances.

41. Therefore, throughout the relevant period, Defendant knew that Plaintiffs and New Mexico Class Members were not being properly compensated for all of their hours worked.

42. Defendant has maintained this policy or practice of refusing to pay its crane operators for Drive Time and Off the Clock Time since at least 2012. Defendant's violations of the NMMWA, therefore, has been part of a continuing course of conduct.

43. Defendant maintained common work, time, and pay policies and procedures throughout its New Mexico locations. As a result, Named Plaintiff and New Mexico Class Members are similarly situated regardless of their location and have been regularly deprived of pay for workweeks during which they worked more than forty hours.

44. Plaintiffs' NMMWA claims against Defendant satisfy the numerosity, commonality, typicality, adequacy, and superiority requirements for the certification of a class action under Federal Rule of Civil Procedure 23.

45. **Numerosity.** The class satisfies the numerosity standard because, upon information and belief, there are at least 100 New Mexico Class Members. Consequently, joinder of all New Mexico Class Members in a single action is impracticable. The data required to calculate the size of the class is within the sole control of Defendant.

46. **Commonality.** There are questions of law and fact common to the class that predominate over any questions affecting individual members. The questions of law and fact common to the class arising from Defendant's actions include, without limitation, the following:

   a) Whether Defendant violated the NMMWA by failing to pay the New Mexico Class Members overtime compensation for travel and preparatory and concluding tasks;

   b) Whether Defendant's violation of the NMMWA constituted a continuing course of conduct; and

   c) The proper measure of damages sustained by the New Mexico Class Members.

47. **Typicality**. Named Plaintiff's claims are typical of those of the class because the Named Plaintiff's claims arise from the same course of conduct and legal theories as the claims of the prospective New Mexico Class Members. Like the New Mexico Class Members, the Named Plaintiff worked as a crane operator on jobsites in New Mexico. Like the New Mexico Class Members, the Named Plaintiff regularly worked in excess of forty hours per week. Like the New Mexico Class Members, the Named Plaintiff was not compensated for compensable travel time and preparatory and concluding tasks under the same policies and practices. The other facts outlined above likewise apply equally to both Named Plaintiff and the New Mexico Class Members.

48. **Adequacy**. Named Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the New Mexico Class Members he seeks to represent. The

interests of the members of the class will be fairly and adequately protected by Named Plaintiff and the undersigned counsel, who have experience in employment and class action lawsuits.

49. **Superiority.** A class action is superior to other available means for the fair and efficient adjudication of this lawsuit. Even in the event any member of the class could afford to pursue individual litigation against a company the size of Defendant, doing so would unduly burden the court system. Individual litigation of one-hundred claims or more would magnify the delay and expense to all parties and flood the court system with duplicative lawsuits. Prosecution of separate actions by individual members of the class would create risk of inconsistent and varying judicial results and establish incompatible standards of conduct for Defendant. A single class action can determine the rights of all New Mexico Class Members in conformity with the interest of efficiency and judicial economy.

### IX. CAUSE OF ACTION ONE: FLSA

50. During the relevant period, Defendant violated Section 7 of the FLSA, 29 U.S.C. §§ 207, and 215(a)(2), by employing the Named Plaintiff and the Potential Opt-In Plaintiffs, in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA as stated herein above, for workweeks longer than 40 hours without compensating such employees for all of their work in excess of forty hours per week at rates no less than one-and-one-half times their regular rates for which they were employed. Defendant has acted willfully in failing to pay Plaintiffs in accordance with applicable law.

### X. CAUSE OF ACTION TWO: NMMWA

51. During the relevant period, Defendant violated the NMMWA, N.M. STAT. § 50-4-22 (West 2018), by employing the Named Plaintiff and the New Mexico Class Members, for workweeks longer than 40 hours without compensating such employees for all of their work in excess of forty

hours per week at rates no less than one-and-one-half times their regular hourly rate. Defendant's violation of the NMMWA occurred as part of a continuing course of conduct.

## XI. PRAYER FOR RELIEF

For the foregoing reasons, the Named Plaintiff prays for judgment against Defendant as follows:

a. For an expedited Order authorizing notice to Potential Opt-In Plaintiffs under the FLSA, 29 U.S.C. § 216(b);

b. For an Order certifying the NMMWA claims as a Class Action pursuant to Fed. R. Civ. P. 23, for designation of Named Plaintiff as Class Representative, and for designation of Plaintiff's counsel as class counsel;

c. For an Order under Section 16(b) of the FLSA, 29 U.S.C. §216(b), finding Defendant liable for unpaid back wages due to Named Plaintiff and the Potential Opt-In Plaintiffs and for liquidated damages equal in amount to the unpaid compensation found due to Named Plaintiff and the Potential Opt-In Plaintiffs;

d. For an Order awarding Named Plaintiff and the New Mexico Class Members damages pursuant to N.M. Stat. 50-4-26, including damages for all violations, regardless of the date on which they occurred, as a result of Defendants' continued course of conduct pursuant to N.M. Stat. Ann. 50-4-32;

e. For an Order awarding Named Plaintiff (and the Potential Opt-In Plaintiffs and New Mexico Class Members) the taxable costs and allowable expenses of this action;

f. For an Order awarding Named Plaintiff (and the Potential Opt-In Plaintiffs and New Mexico Class Members) attorneys' fees; and

g.  For an Order awarding Named Plaintiff (and the Potential Opt-In Plaintiffs and New Mexico Class Members) pre-judgment and post-judgment interest at the highest rates allowed by law;

h.  For an Order awarding Named Plaintiff declaratory and injunctive relief as necessary to prevent the Defendant's further violations, and to effectuate the purposes, of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq*. and the New Mexico Minimum Wage Act, as amended, N.M. STAT. § 50-4-19, *et seq*.; and

i.  For an Order granting such other and further relief, at law or in equity, as may be necessary and/or appropriate.

Respectfully submitted,

**FAIR LABOR LAW**

By: */s/ Aaron Johnson*
Aaron Johnson
State Bar No. 24056961
ajohnson@fairlaborlaw.com
314 E. Highland Mall Blvd, Ste. 401
Austin, Texas 78752
Ph: (512) 277-3505
Ph: (512) 277-3254

**ATTORNEY FOR PLAINTIFF**